# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

FRANCINE KARP,                                    :

     Plaintiff and Counter-Defendant,    :

vs.                                               :       CA 11-0449-CG-C

AMERICAN LAW ENFORCEMENT
NETWORK, LLC, et al.,                             :

     Defendants, Counter-Plaintiffs,
     and Third-Party Plaintiffs,         :

vs.                                               :

ROMAN KARP, et al.,                               :

     Third-Party Defendants.             :

## REPORT AND RECOMMENDATION

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on two motions:

1. A motion to remand (Doc. 18) and brief in support (Doc. 19), filed by American Law Enforcement Network, LLC ("ALEN"), Euclid Enterprises, LLC, E.J. Saad, and Robert E. Taylor on August 19, 2011; along with a response (Doc. 26) and supplemental response (Doc. 32), filed by Christa Taylor on August 23, 2011 and September 2, 2011, respectively; and

2. A motion to realign the parties (Doc. 33) filed by William (Bill) Spain, SpainB Development, and SpainB Development, LLC (the "Spain Parties") on September 2, 2011; along with a response (Doc. 37), filed by ALEN, Euclid, Saad, and Taylor on September 16, 2011; and a reply (Doc. 38), filed by Spain on the same day.

After consideration of the motions, it is the undersigned's recommendation that the motion to remand be **GRANTED**, and that the motion to realign be **DENIED**.

**Background**

This action, which originated when the plaintiff, Francine Karp, filed a complaint in the Circuit Court for Mobile County, Alabama on February 28, 2011 (*see* Doc. 19-2) was removed to this Court on August 5, 2011 (*see* Doc. 1) by the Spain Parties, who were brought into the action on July 29, 2011 via the "Second Amended Counter-Claim and Third-Party Complaint" filed by ALEN and Euclid (*see* Doc. 19-16).  The Spain Parties contend that the removal of this action is proper because "a separate or independent claim or cause of action"—"arising under the Constitution, laws, or treaties of the United States"—exists against them.  28 U.S.C. §§ 1331 & 1441(c).  They also contend that "Third-Party Plaintiffs[—ALEN and Euclid—filed such a claim, one that is completely preempted by the Copyright Act,]in the[ir] Second Amended Third-Party Complaint" (Doc. 1, notice of removal; *see* Doc. 19-16.)  The Spain Parties further contend that the allegations in ALEN and Euclid's second amended third-party complaint are separate and independent from ALEN and Euclid's prior causes of action and call for the interpretation of the Copyright Act to determine ALEN and Euclid's ownership of certain SIMS software.

**Discussion**

For the Spain Parties' removal of this action pursuant to section 1441(c) to be proper, it must be shown that (1) the Spain Parties are authorized to undertake such a removal; (2) the claims asserted against them are separate and independent—that is, they involve an obligation distinct from the non-removable claims in the case; and (3) the

separate and independent claims arise under federal law.   The Court must find that all these elements existed at removal keeping in mind its "obligation to narrowly construe removal statutes"; an obligation that "requires that uncertainties be 'resolved in favor of remand.'"   *White v. Wells Fargo Home Mortgage*, Civil Action No. 1:11–cv–408–MHT, 2011 WL 3666613, at *3 (M.D. Ala. Aug. 22, 2011) (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)).   And if the Spain Parties manage to jump through those hoops, the Court may still, "in its discretion, [ ] remand all matters in which State law predominates."   28 U.S.C. § 1441(c).[1]   As will be explained below, because the Spain Parties are counter-defendants—not third-party defendants—they lack the authority to remove this matter pursuant to section 1441(c).   Further, the holding of *Carl Heck Engineers, Inc. v. LaFourche Parrish Policy Jury*, 622 F. 2d 133 (5th Cir. 1980), under

_____

[1]       For example, at least two district courts in this Circuit, after finding that a third-party defendant, *see Florida Health Scis. Ctr., Inc. v. Schwade*, No. 8:10-cv-2436-T-23MAP, 2011 WL 201464 (M.D. Fla. Jan. 20, 2011), or a counter-defendant who was not an original plaintiff, *see Mace Sec. Int'l, Inc. v. Odierna*, No. 08-60778-CIV, 2008 WL 3851839 (S.D. Fla. Aug. 14, 2008), was authorized to remove the third-party complaint pursuant to section 1441(c), then found that either the claims in the original state law complaint (*Schwade*) or the entire matter (*Mace*) should be remanded to state court, *see Schwade*, 2011 WL 201464, at *2; *Mace*, 2008 WL 3851839, at *5-6; *see also Schwade*, 2011 WL 201464, at *2 ("*Carl Heck* notes with approval that 'the [district] court severed the third-party action and remanded the main claim to state court so that removal does not defeat plaintiff's choice of forum.'") (quoting *Carl Heck Engineers, Inc. v. LaFourche Parrish Policy Jury*, 622 F. 2d 133, 136 (5th Cir. 1980)); *Mace*, 2008 WL 3851839, at *5 (setting forth a cogent analysis of discretionary remand pursuant to section 1441(c) and stating that "[t]he nature of the claims must be examined to determine "'whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal claims'") (quoting *Hayduk v. United Parcel Serv., Inc.*, 930 F. Supp. 584, 599-600 (S.D. Fla. 1996) (quoting, in turn, *In re City of Mobile*, 75 F.3d 605, 613 (11th Cir. 1996))).

which certain third-party defendants may remove pursuant to section 1441(c) and which is binding on this Court, should not be extended to justify this removal. On the contrary, where the claims asserted by a third-party defendant do not hew closely to the claims asserted by the third-party defendant in *Carl Heck*, the case should be remanded.

1.  Authorization to Remove.

At least in the Fifth Circuit and—by extension—this Circuit, certain third-party defendants may remove a case to federal court pursuant to 28 U.S.C. § 1441(c), which provides that

> [w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

*Id.*

In *Carl Heck*, the former Fifth Circuit held that if a third-party complaint satisfies section 1441(c) by stating "a separate and independent claim which if sued upon alone could have been brought properly in federal court, there should be no bar to removal." *Id.* at 136. While the position staked out by the Fifth Circuit in *Carl Heck* is in the minority (and has been roundly criticized),[2] it is nevertheless binding on this Court.

---

[2]     "The majority of federal courts have determined that under 28 U.S.C. §1441(c) neither a plaintiff who is made a counter[-]defendant, nor a third-party defendant brought into the state action by the original defendant can exercise the right of removal." *Memorial Hospice, Inc. v. Norris*, Civil Action No. 2:08-CV-48-SAA, 2009 WL 2425920, at *1 (N.D. Miss. Aug. 6, 2009) (citations omitted). But the Fifth Circuit, and—by extension—some district courts in the Eleventh Circuit have "taken the minority position that a third-party defendant who was not an original plaintiff to the

*See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981); *see, e.g., HSBC Bank USA, N.A. v. Pinkston*, No. 8:08–cv–1662–T–24 EAH, 2008 WL 4791816, at *1 (M.D. Fla. Oct. 31, 2008) (recognizing precedential effect of *Carl Heck* on courts within the Eleventh Circuit); *Chevy Chase Bank, F.S.B. v. Carrington*, No. 6:09-cv-2132-Orl-31GJK, 2010 WL 1854123, at *1 (M.D. Fla. May 10, 2010) ("The weight of authority is that removal under Section 1441(c) is limited to defendants, not third-party defendants," but "[w]ithin this Circuit, [ ] binding authority permits third party defendants to effect removal pursuant to that statute.").[3]

---

state court action may remove the case to federal court based upon a federal law counterclaim so long as the new claim is "separate and independent," that is, the claim "involves an obligation distinct from the nonremovable claims in the case." *Id.* (citations omitted); *see also Oklahoma v. 1983 Porsche*, No. 08-CV-0528-CVE-FHM, 2008 WL 4570315, at *1-4 (N.D. Okla. Oct. 10, 2008) (concluding that it was "clear that most courts have rejected the Fifth Circuit's rule and found that third-party defendants may not remove a case to federal court based on a federal question claim in the third-party complaint," and "[c]onstruing § 1441(c) narrowly, . . . find[ing] that the statute refers to separate and independent claims 'joined' in the plaintiff's complaint and does not permit removal based upon claims raised by other parties").

[3] The Court should note that at least one district court in this Circuit has held that the 1990 amendment to section 1441(c) "wiped out *Carl Heck*." *Moss Land & Mineral Corp. v. Fidelity & Cas. Co. of NY*, No. Civ.A. 03–AR–845–J., 2003 WL 21360803, at *3 (N.D. Ala. June 6, 2003). Judge Acker went on—

> In fact, *Carl Heck* may have been a cause, if not the precipitating reason, for the Congressional tightening of the removal loophole that had been created by the Fifth Circuit in *Carl Heck*. Congress answered the question, making it no longer possible to remove an entire case and then to separate the removable from the non-removable. A comparison of the § 1441(c) language, before and after *Carl Heck* proves that *Carl Heck* no longer reflects the law of any circuit.

The Fifth Circuit and some district courts in this Circuit have "extended the holding of *Carl Heck* to permit counter-defendants, who were not original plaintiffs, to remove an appropriate action to federal court."[4]   *Mace Sec. Int'l*, 2008 WL 3851839, at *4

---

*Id.*; *cf. Bear Lumber Co., Inc. v. Headley*, Civil Action No. 2:08cv841-MHT, 2009 WL 2448161, at *2 (M.D. Ala. Aug. 10, 2009) (in which Judge Thompson noted the defendant's argument "that *Carl Heck* is no longer good law, at least in the Eleventh Circuit"—because of the 1990 amendment to section 1441(c) and the Supreme Court's decision in *Holmes Group*—and stated that "it is not perfectly clear that this case would be removable pursuant to a proper third-party complaint," but concluded that "the court need not reach that question, because [the] complaint [at issue was] not a proper third-party complaint" pursuant to Rule 14).

[4]     In *Southern Timber Co. v. Ellis*, Civil Action File No. 4:07-CV-0215-HLM, 2008 WL 2987198 (N.D. Ga. Aug. 1, 2008), the Court adopted the "exceedingly thorough and extremely well-reasoned Non-Final Report and Recommendation" of Magistrate Judge Walter E. Johnson, in which Magistrate Judge Johnson examined the *Carl Heck* decision, subsequent decisions by the Fifth Circuit and district courts in the Fifth Circuit analyzing *Carl Heck*, the **sole** Eleventh Circuit decision to reference *Carl Heck*—*Borg-Warner Leasing v. Doyle Electric Co., Inc.*, 733 F.2d 833 (11th Cir. 1984)—and many of the decisions from the "numerous district courts in the Eleventh Circuit [that] have applied *Carl Heck*."   *See* 2008 WL 2987198, at *10-16.

Notably, in *Borg-Warner*, the Eleventh Circuit seemed to limit the application of *Carl Heck*.   There, the panel noted *Carl Heck*

> involved the propriety of removing a diverse third party indemnity claim which the federal district court had retained after remanding the original, nondiverse action. The panel in *Carl Heck* did not have to reach the more difficult question whether the original action itself would have been removable since the lower court had remanded the original action to state court.

733 F.2d at 835 n.2.

Further, what can be distilled from Magistrate Judge Johnson's thorough review of the case law is this: "although binding precedent recognizes the right of a third-party defendant to remove in certain circumstances, district courts in this Circuit have repeatedly remanded cases that do not fit within the **narrow confines** of *Carl Heck* and

(citing *State of Texas by and through the Bd. of Regents of the Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 816 (5th Cir. 1998), *cert. denied*, 525 U.S. 1102 (1999)); *see, e.g, id.* ("[A]lthough *Walker* is not binding, the *Walker* court's extension of *Carl Heck* to counter-defendants who are not original plaintiffs is persuasive[, and t]hus, as a newly joined counter-defendant, Marcoe did not partake in the decision to bring the suit in state court and should not be denied the opportunity to remove a case to federal court under appropriate circumstances.") (citation omitted); *but see Citibank (South Dakota), N.A. v. Duncan*, No. 2:09–CV–868–WKW, 2010 WL 379869, at *2 (M.D. Ala. Jan. 25, 2010) ("The Eleventh Circuit has yet to decide whether § 1441(c) encompasses removals by counter-defendants, and given the divisiveness among other courts as to the underlying conclusion reached in *Carl Heck*, the court is persuaded that the better course is to remand, rather than to guess what this circuit might hold if presented with the unsettled issue of whether *Carl Heck* should be extended to removals by counter-defendant.") (citing *Sterling Homes, Inc. v. Swope*, 816 F. Supp. 319, 320–27 (M.D. Pa. 1993) (in which, based upon the absence of Third Circuit precedent and "the presumption against removal in ambiguous cases," the district court "follow[ed] the majority rule among courts . . . that only first party defendants may remove an action to federal court" and remanded the action to state court)) (some citations omitted).

---

its progeny."    *Southern Timber*, 2008 WL 2987198, at *16 (emphasis added).

In *Walker*, now Chief Judge Jones first recognized that the holding of *Carl Heck* was limited to the "remov[al] of a case to federal court pursuant to § 1441(c)" by "third-party indemnity defendant[s]." 142 F.3d at 816. She then went on to apply the "rationale" of that decision to removal by a counter-defendant—

> This court has not previously extended the *Carl Heck* rationale to ordinary counter-defendants. Doing so would fly in the face of the well-pleaded complaint rule where the counter-defendants were the same parties as the state court plaintiffs.
>
> Here, however, the consequence of permitting removal satisfied *Carl Heck* without breaching the well-pleaded complaint rule. We shall assume that the Regents cannot remove under § 1441(c) when joined in their individual capacities as counter-defendants, because (in their official capacities) they were the plaintiffs by and through whom the state sued Walker. Low, on the other hand, was not a party in the case in any way before Walker sued him for § 1983 violations. If the rationale of *Carl Heck* correctly affords third-party defendants the opportunity of § 1441(c) removal to federal court, to which they could have removed when sued alone, then that rationale protects Low.

*Id.*; *see also Greene Home Owners Ass'n, Inc. v. Vogel*, No. CA 3:98–CV–2966–R, 1999 WL 292718, at *1 (N.D. Tex. Apr. 12, 1999) (explaining that in *Walker*, "the Fifth Circuit held that removal was appropriate if the counterclaim defendants were not the same parties as the original state court plaintiffs and if the counterclaim was separate and independent from the original claim") (citing 142 F.3d at 816-17).

After the Fifth Circuit's extension of *Carl Heck* through *Walker*, *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826 (2002), was handed down. In *Holmes Group*, the Supreme Court examined whether federal jurisdiction exists "over a case in which the complaint does not allege a claim arising under federal patent law, but the

answer contains a patent-law counterclaim," *id.* at 826, and determined that the "well-pleaded complaint" rule does not allow a patent infringement counterclaim to form the basis for federal question jurisdiction under sections 1338 or 1331, *see id.* at 830-34.  The few district courts in this Circuit to address the viability of *Carl Heck* as extended by the Fifth Circuit in *Walker* after the *Holmes Group* decision have held that although, "as recognized by *Walker* and strongly intimated by *Holmes Group*, a counterclaim defendant, who was already in the lawsuit as the original plaintiff, cannot remove pursuant to § 1441(c)," *North Star Capital Acquisitions, LLC v. Krig*, Nos. 3:07-cv-264-J-32MCR, *et al.*, 2007 WL 3522425, at *2 (M.D. Fla. Nov. 15, 2007) (citing *Holmes Group*, 535 U.S. at 831-32), "the *Holmes Group* rationale does not appear to apply to a counterclaim defendant who was not a party to the original action." *Id.*; *see also id.* at *3 ("*Holmes Group* does not appear to eviscerate *Carl Heck* and *Walker*; the holding in *Holmes Group* is limited to the facts of that case and the policy concerns addressed by the Supreme Court do not apply when the removing party is a counterclaim defendant who was not an original party.") (citing *Dallas Indep. Sch. Dist. v. Calvary Hill Cemetery*, 318 F. Supp. 2d 429 (N.D. Tex. 2004) (continuing to apply the *Carl Heck* rationale after the Supreme Court rendered its *Holmes Group* decision)) (footnote omitted); *Mace Sec. Int'l*, 2008 WL 3851839, at *4 n.2 ("The holding in *Holmes* suggests an original plaintiff/counter-defendant cannot remove pursuant to section 1441(c), but this does not appear to apply to newly joined counter-defendants.").  As will be discussed further, below, the undersigned is concerned that allowing a party brought into a lawsuit by a

defendant—on either a third-party complaint or a counterclaim—to engineer federal court jurisdiction where none otherwise would exist is contrary to the well-pleaded complaint rule.

*But,* given that *Carl Heck* is binding precedent, *see supra,* and as such, removal, pursuant to section 1441(c), by a third-party defendant is proper, whereas *Walker,* wherein the Fifth Circuit extended *Carl Heck* to counter-defendants, is only persuasive, this Court must initially determine whether the Spain Parties are properly classified as third-party defendants or counter-defendants. *See, e.g., Mace Sec. Int'l,* 2008 WL 3851839, at *3. In making this determination, the "[l]egal characterizations of a party's status as stated in a complaint are not controlling; rather the Court must look at the factual allegations . . . to determine a party's proper status. Furthermore, in determining the removing parties' proper characterization, federal law controls." *Palisades Collections LLC v. Shorts,* Civil Action No. 5:07CV098, 2008 WL 249083, at *3 (N.D. W. Va. Jan. 29, 2008) (citations and internal quotations omitted; alteration to original); *see also Chicago, Rock Island & Pacific R.R. v. Stude,* 346 U.S. 574, 579-80 (1954) ("For the purpose of removal, the federal law determines who is plaintiff and who is defendant.").

"Rule 14 of the Federal Rules of Civil Procedure governs third-party practice and establishes that '[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.'" *Vision Bank v. Swindall,* Civil Action No. 09-0442-CG-M, 2009 WL 3158194, at *1 (S.D.

Ala. Sep. 28, 2009) (quoting Fᴇᴅ. R. Cɪᴠ. P. 14(a)(1)). A third-party claim for indemnification, such as the one asserted in *Carl Heck*, is the archetypal basis for impleader pursuant to Rule 14.[5] *See, e.g., Martco Ltd. P'ship v. Bruks Inc.*, 430 Fed. App'x 332, 334-35 (5th Cir. 2011) (per curiam) (in which the court of appeals reversed and remanded the district court's dismissal of a third-party complaint brought pursuant to Rule 14 for indemnity, noting that "[t]he secondary or derivative liability notion is **central** and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory") (quoting 6 Cʜᴀʀʟᴇs Aʟᴀɴ Wʀɪɢʜᴛ, Aʀᴛʜᴜʀ R. Mɪʟʟᴇʀ & Mᴀʀʏ Kᴀʏ Kᴀɴᴇ, Fᴇᴅᴇʀᴀʟ Pʀᴀᴄᴛɪᴄᴇ & Pʀᴏᴄᴇᴅᴜʀᴇ § 1446, at 415–21 (3d ed. 2010)) (emphasis added).

> [Further, "r]ule 14(a) allows a defendant to assert a claim against any person not a party to the main action only if that third person's liability on that claim is in some way dependent upon the outcome of the main claim." *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987). "An entirely separate claim, even one that arises out of the same set of facts, does not allow a third-party defendant to be impleaded." *Coates v. CTB, Inc.*, 173 F.

---

[5]        Put differently, in the context of removal,

> [T]he Fifth Circuit has allowed removal by third-party defendants "where the third-party complaint seeks indemnity based on a separate obligation owed to the defendant (such as a contractual indemnity obligation)." *Jones v. Petty–Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1066 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992) (citing *Carl Heck Engineers, Inc. v. Lafourche Parish Police Jury*, 622 F.2d 133, 136 (5th Cir. 1980)).

*Ridgewood Clinics, Inc. v. Verma*, No. 4;97CV45–B–D, 1997 WL 271714, at *2 (N.D. Miss. May 6, 1997) (footnote omitted and citation altered).

Supp. 2d 1200, 1202 (M.D. Ala. 2001) (citing *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967)).

*Swindall*, 2009 WL 3158194, at *1.

Conversely, "[a] counterclaim is any suit brought by a defendant against the plaintiff, **including claims properly joined against the plaintiff**." *Mace Sec. Int'l*, 2008 WL 3851839, at *3 (citing Fed. R. Civ. P. 13(a)-(c)) (emphasis added). As such, "[a] counterdefendant need not also be a plaintiff." *Dartmouth Plan, Inc. v. Delgado*, 736 F. Supp. 1489, 1491 (N.D. Ill. 1990) (citing Fed. R. Civ. P. 13(h)); *see also id.* (holding that where the defendants were "not seeking to hold any of the [removing parties/alleged] counterdefendants liable to defendants for any liability defendants may owe to plaintiff" and were, instead, alleging that the alleged counterdefendants were "directly liable to them for injuries to defendants . . . [t]he removing parties [were] properly characterized as counterdefendants); *Shorts*, 2008 WL 249083, at *3 ("the counterclaim defendant may be a new party that is brought in for the first time on the counterclaim, as long as the claims against the new party are properly joined with the claims against the original party"); *id.* ("joinder under Rule 13(h) may **only** be invoked if a new party is being joined with an existing party in a counterclaim or cross-claim that lies against **both** the new and existing parties") (emphasis added and citations omitted).

2.     Analysis.

After reviewing ALEN and Euclid's claims against the Spain Parties, there is no doubt that the Spain Parties are counter-defendants—not third-party defendants. As

12

such, they lack the authority to remove this matter pursuant to section 1441(c) and *Carl Heck*. *Cf. Chevy Chase Bank*, 2010 WL 1854123, at *1 & *3 (concluding that a defendant, Flagstar, brought into a lawsuit by a third-party complaint **that chose to characterize the claims asserted against it as cross-claims, not third-party claims**, lacked the power to remove pursuant to section 1441(c)—"If *Carl Heck Engineering* still governed this issue, this Court would be obligated to reach a contrary result and continue to exercise jurisdiction over this case. But based on the undisputed assertion in Flagstar's motion, Carrington's TILA and RESPA claims should be treated as crossclaims rather than third-party claims, and *Carl Heck Engineering* does not apply.").

The complaint filed February 28, 2011 in the Circuit Court for Mobile County, Alabama by plaintiff Francine Karp against ALEN, Euclid, Dr. Robert E. Taylor, Christa Taylor, Dr. Eric Petersen, and E.J. Saad involved ownership, control and/or management of ALEN and Euclid (*see generally* Doc. 19-2), and was voluntarily dismissed by Francine Karp on March 9, 2011 (*see* Doc. 19-5), but not before ALEN, Euclid, Dr. Taylor, and Petersen, on March 7, 2011, filed a counterclaim against Francine Karp seeking injunctive relief to protect the property of ALEN and Euclid and alleging a conspiracy between Francine and Roman Karp to cause them damages (*see generally* Doc. 19-4).[6] ALEN and Euclid first amended this counterclaim on April 20, 2011[7] (Doc.

---

[6] After several other filings by the parties and a hearing, Judge Graddick, on March 21, 2011, entered a preliminary injunction in favor of ALEN and Euclid and against Francine Karp that required her to return ALEN's computer programs and software, computer passwords, customer list, computer IP addresses, and other trade

19-12); the counterclaims asserted in this filing focus on actions Francine Karp allegedly committed—in concert with others—just prior to and after the filing of her lawsuit, after she left her employment with Euclid, and in violation of the TRO and preliminary injunction (*see generally id.*). The corrected first amended counterclaim was itself amended on July 29, 2011 to add the Spain Parties as defendants. (*See* Doc. 19-16.) This second amendment incorporates by reference the entirety of the corrected first amended counterclaim (*see id.*, ¶ 1) and alleges that the Spain Parties have acted with Francine Karp and others to withhold intellectual property belonging to ALEN and Euclid (*see, e.g.*, ¶ 18 ("The passwords to ALEN's server at NLETS is known only to Fran Karp, Frank Pina and Bill Spain and the server is configured such that the password cannot be reset without a high risk of loss of service to the users of the network that may not be correctable."); ¶ 20 ("ALEN and Euclid have demanded Fran Karp, Frank Pina and Bill Spain provide said password(s) and the computer IP addresses for users of the Software, but each of them has failed or refused to do so.")).

To be classified as third-party defendants under Rule 14, the Spain Parties would have had to be brought into this lawsuit because ALEN and Euclid believe the Spain Parties "[are] or may be liable to [ALEN and Euclid] for all or part of the claim[s] against [ALEN and Euclid]." *Swindall*, 2009 WL 3158194, at *1. Put differently, the Spain

secrets belonging to ALEN, and further required her to surrender all ALEN property in her possession. (*See* Doc. 19-9.)

[7] The first amended counterclaim (Doc. 19-11) was actually filed on April 19, 2011, but, the next day, a version correcting clerical errors was filed.

Parties can be impleaded pursuant to Rule 14(a) "only if [the Spain Parties'] liability on [the claims ALEN and Euclid assert against them] is in some way dependent upon the outcome of the main claim" (that is, the claims brought against ALEN and Euclid). *Olavarrieta*, 812 F.2d at 643. Francine Karp's case against ALEN and Euclid sought a determination as to her ownership interest and right to manage Euclid. While factually related to the claims against them, ALEN and Euclid's claims against the Spain Parties, on the other hand, focus on the alleged withholding of intellectual property belonging to ALEN and Euclid. As such, the Spain Parties are not third-party defendants. *See Coates*, 173 F. Supp. 2d at 1202 ("An entirely separate claim, even one that arises out of the same set of facts, does not allow a third-party defendant to be impleaded."). ALEN and Euclid do not argue, moreover, that the Spain Parties are "liable to [ALEN and Euclid] for all or part of [Francine Karp's] claim against [ALEN and Euclid]." *Swindall*, 2009 WL 3158194, at *1. Instead, the claims asserted against the Spain Parties are counterclaims because they can be—and have been—properly joined with the claims against the plaintiff, Francine Karp. *See Mace Sec. Int'l*, 2008 WL 3851839, at *3; *Shorts*, 2008 WL 249083, at *3.

Finding that the Spain Parties lack the authority to remove this action pursuant to 28 U.S.C. § 1441(c) because they are counter-defendants, and as such, the Court is not bound by *Carl Heck*, the Court need not determine whether the claims asserted against

them are separate and independent or that those separate and independent claims arise under federal law.[8]

### 3. Separate motion to realign the parties.

The Spain Parties filed their motion to realign (Doc. 33) "to preserve all arguments and present this Court with all possible avenues within which [we] may retain jurisdiction" (*id.* at 2). As this Court has recently stated:

> In addressing the proper alignment of the parties, the court must consider "the principal purpose of the suit and the primary and controlling matter in dispute." *Indemnity Ins. Co. of North America v. First Nat. Bank at Winter Park, Fla.*, 351 F.2d 519, 522 (5th Cir. 1965) (citing *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 72 (1965)). "It is our duty . . . to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.' . . . Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interest,' . . . exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit,' . . . and the 'primary and controlling matter in dispute.'" *City of Indianapolis*, at 70 (citations omitted); *Hamer v. New York Ry.*, 244 U.S. 266 (1917) (parties must be realigned for diversity

---

[8] Even if the claims asserted against the Spain Parties are separate and independent, *see American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 13-15 (1951); *Carl Heck*, 622 F.2d at 136; *Walker*, 142 F.3d at 817, it is not clear—at least not yet in this Circuit—that the Copyright Act is part of a select group of federal laws that "so forcibly and completely displace[] state law that [a] plaintiff's cause of action is either wholly federal or nothing at all," which thus converts "what otherwise appear[ to be] merely [ ] state law claim[s into] claim[s] 'arising under' federal law for jurisdictional purposes." *Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796, 803-04 (5th Cir. 2011) (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008)). *See Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 864-65 (11th Cir. 2008) ("Although our circuit has not decided whether the Copyright Act has such complete preemptive effect, four other circuits have held that at least some state law claims are preempted by the Copyright Act such that federal subject matter jurisdiction exists over the claim under the complete preemption doctrine. . . . In this case, we need not decide whether to follow our four sister circuits and hold that the Copyright Act has complete preemptive effect.").

purposes according to their ultimate interests in the outcome of the case).
*Cromwell v. Admiral Ins. Co.*, Civil Action No. 11–0155–CG–N, 2011 WL 2670098, at *4 (S.D. Ala. June 21, 2011). In *Cromwell*, Magistrate Judge Nelson addressed whether parties should be realigned to ensure complete diversity, but "[r]ealignment does not only apply to diversity cases." *Seminole County v. Pinter Enters., Inc.*, 184 F. Supp. 2d 1203, 1209 (M.D. Fla. 2000) (citations omitted). In *Seminole County*, a regulatory takings case, the court relied on two Supreme Court condemnation cases to determine that the plaintiffs—local governments—should not be realigned as the defendants, and as such, they could not remove the case to federal court. *See id.* at 1209-10.

Courts, however, "have seriously questioned whether the procedural mechanism of 'realignment' can be used to support removal at all." *Salge v. Buchanan*, C.A. No. C-07-212, 2007 WL 1521738, at *4 n.5 (S.D. Tex. May 24, 2007) (noting that "the major Supreme Court and Fifth Circuit cases addressing realignment involve the question of whether suits originally filed in federal court (rather than removed) could proceed under diversity jurisdiction") (citing *City of Indianapolis*, 314 U.S. 63; *Zurn Induss., Inc. v. Acton Constr. Co., Inc.*, 847 F.2d 234 (5th Cir. 1988); *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173 (5th Cir. 1984); some citations omitted); *but see Chevy Chase Bank*, at *2 ("The propriety of a removal is determined only after the parties have been realigned according to their actual interests in the cause.") (citations omitted). In one particularly well-reasoned opinion, *Huntsman Corp. v. International Risk Insurance Co.*, Civil Action No. H-08-1542, 2008 WL 4453170 (S.D. Tex. Sep. 26, 2008), Judge Rosennthal

exhaustively addressed this issue and observed,[9]

> After reviewing the cited authorities and conducting an independent search for relevant case law, this court concludes that while there is authority supporting both the proposition that realignment may be used to satisfy diversity jurisdiction in removed actions and the proposition that realignment is not appropriate when diversity was not present when the action was removed, **the trend in this circuit disapproves of using realignment after removal to cure a defect in removal jurisdiction**. . . . **Using realignment both to avoid the statutory limit on the parties able to remove and the jurisdictional limit on removal is a far cry from resolving all doubts against removal.** Such a procedure was disapproved in *Avis Rent a Car* [*Sys., Inc. v. Zea*, No. Civ. A. G-05-469, 2005 WL 2850248, at *3-4 (S.D. Tex. Oct. 31, 2005)]. The recent case law disapproving of realigning parties to supply removal jurisdiction and to enable third-party defendants to remove is persuasive and weighs against extending such uses of realignment to this case, in which third-party defendants seek realignment to bring themselves within the scope of section 1441(a) and to create diversity jurisdiction.

*Id.* at *7 (other citations omitted and emphasis added); *see also F.L. Crane & Sons, Inc. v. IKBI, Inc.*, 630 F. Supp. 2d 718, 721-22 (S.D. Miss. 2009) (discussing *Huntsman* and using its logic to reject a third-party defendant's attempt to use realignment to allow it to remove on diversity grounds).

Similarly, if this Court were to allow realignment in this case, it would free the Spain Parties from the quagmire that is removal pursuant to section 1441(c) as interpreted by courts in the Fifth Circuit and this Circuit and realign them as defendants,

---

[9]        In *Huntsman*, the court rejected the realignment argument, but kept jurisdiction over the entire matter pursuant to section 1331, finding, first, that the reinsurers, brought in on a third-party complaint—not a counterclaim—regarding insurance coverage, properly removed pursuant to section 1441(c), and second, that the claims asserted against the reinsurers were both separate and independent and arose under federal law (the New York Convention, 9 U.S.C. § 201 *et seq.*, and the Panama Convention, 9 U.S.C. § 301 *et seq.*).

bringing them with the scope of section 1441(a). Such a realignment would "cure [the] defect in [their] removal"—that, as addressed above, they are counter-defendants, not third-party defendants—and "avoid the statutory limit [even as extended by some courts] on the parties able to remove." *Huntsman*, 2008 WL 4453170, at *7. Both of which would go against "resolving all doubts against removal." *Id.*

Moreover, the Spain Parties have not offered—and the Court's independent research has not revealed—authority to support realigning either a third-party or counter-claim defendant as a defendant to justify removal pursuant to section 1441(c). Such a dearth of authority makes sense, however, because such a realignment would also fly in the face of the well-pleaded complaint rule. *See Cross Country Bank v. McGraw*, 321 F. Supp. 2d 816, 824 n.8 (S.D. W. Va. 2004) (noting that "while the functional test may extend beyond removal in diversity cases, no court has explicitly held that the test provides an exception to the well-pleaded complaint rule") (citing, *inter alia*, *Seminole County*, 184 F. Supp. 2d at 1209, which, as stated by the court in *McGraw*, "assert[ed] that test could apply in federal question cases without addressing well-pleaded complaint rule and remanding because realignment was not appropriate given facts of that case").[10]

---

10      Notably, the court in *McGraw* concluded that its decision is consonant with the principles that must guide this Court's analysis of removal statutes. Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction. Were this Court to permit removal based on a third-party

Even if the Court were to find that counter-defendants, such as the Spain Parties, can be realigned as defendants to justify removal, the Spain Parties should not be realigned here because, when applying the "principal purpose" test, "[t]he determination of the 'primary and controlling matter in dispute' does not include the cross-claims and counterclaims filed by the defendants. Instead, it is to be determined by plaintiff's principal purpose for filing [her] suit.'" *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008) (quoting *Zurn*, 847 F.2d at 237). The plaintiff's principal purpose for filing her suit was to assert her rights with regard to ALEN and Euclid. "On that issue, [the plaintiff] and [the Spain Parties are] properly aligned." *Id.*; *see also OPNAD Fund, Inc. v. Watson*, 863 F. Supp. 328, 334 (S.D. Miss. 1994) (where a counterclaim defendant attempted to remove pursuant to section 1441(a) on the basis of the functional test, the court, relying on *City of Indianapolis*, observed that "a party aligned in interest with a true plaintiff should not be permitted to remove").

---

complaint **or expand the functional test beyond its fairly limited purposes, the result would be to create federal jurisdiction beyond that contemplated by Congress**. Further, the Fourth Circuit has taken a very direct, juridical approach to jurisdictional disputes. Permitting broad exceptions to the well-pleaded complaint rule would make murky the substantially clear rules regarding federal question jurisdiction. Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss.

*Id.* at 824 (internal citations and quotation marks omitted and emphasis added); *see also City of Indianapolis*, 314 U.S. at 76 ("These requirements, however technical seeming, must be viewed in the perspective of the constitutional limitations upon the judicial power of the federal courts[.]").

Next, the undersigned notes that the fact that the claims vis-à-vis the original plaintiff in this matter are stayed does not benefit the Spain Parties realignment argument. Because, even where the original complaint is dismissed, "[a] counterclaimant is not automatically considered a plaintiff, for purposes of removal." *Boudin v. South Point, Inc.*, Civil Action No. 08-0390-CG-M, 2009 WL 1635927, at *2 (S.D. Ala. June 9, 2009) (citing *Chancellor's Learning Sys., Inc. v. McCutchen*, No. 1:07 CV 1623, 2008 WL 269535, *2 (N.D. Ohio Jan. 29, 2008)); *see also Nationwide Mut. Ins. Co. v. Barrett*, Civil Action No. 5:10CV71, 2010 WL 3396818, at *2 (N.D. W. Va. Aug. 25, 2010) ("The only justification for realignment here is that the original complaint has been dismissed. That fact "in and of itself simply is not a valid reason to grant [Nationwide] defendant status for removal purposes.") (quoting *Boudin*, 2009 WL 1635927, at *2). Even where a counterclaim is "the 'mainspring' of an action, the facts of the case may not warrant a realigning of the parties." *Nationwide*, 2010 WL 3396818, at *2 (citing *Boudin*, 2009 WL 1635927, at *2). And, moreover, the "[f]acts forming the basis of realignment must exist at the time of filing the original suit." *Texas Pac. Coal & Oil Co. v. Mayfield*, 152 F.2d 956, 957 (5th Cir. 1946). That is simply not the case here.

Finally, it should also be noted that the Spain Parties' arguments in favor of realignment may be contingent upon the Court's ruling on their pending motion to sever (Doc. 20), which is before Judge Granade.[11] This report and recommendation is merely

---

[11] There, for example, the Spain Parties state:

to assist Judge Granade to finally determine the Spain Parties' three pending motions. And thus, to the extent her decision on the motion to sever impacts this report and recommendation—or vice versa—the undersigned defers to the District Judge.

## Conclusion

After a careful consideration of the motions, it is the undersigned's **RECOMMENDATION** that the motion to remand (Doc. 18) be **GRANTED**, the motion to realign (Doc. 33) be **DENIED**, and that, if consistent with the District Judge's ruling on the motion to sever (Doc. 20), this entire matter be **REMANDED** to the Circuit Court of Mobile County, Alabama.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 18th day of November, 2011.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

Once this Court severs the federally-preempted claim against the Spain Defendants from the underlying action, the proper alignment of the parties is clear: ALEN and Euclid vs. the Spain Defendants. Such realignment will confirm this Court's federal question jurisdiction over this matter and address the various procedural attacks presented by ALEN and Euclid.

(Id. at 7.)

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.     *Objection*.    Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.    Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.    *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).    The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[12] after being served with a copy of the recommendation, unless a different time is established by order.    The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.    The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.    It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.    Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded)*.    Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.    Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[12]     Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED. R. CIV. P. 72(b)(2).